PER CURIAM.
This action for declaratory judgment filed by the appellant state agency against the appellee Di-Ran Products, Inc., presented the question of whether the products made and dispensed by the defendant were milk products, requiring that defendant be licensed and regulated under Chapter 502 Fla.Stat., F.S.A., or were food products, calling for licensing and regulation under Chapter 500 Fla.Stat., F.S.A. After first holding the former, the court on rehearing entered a judgment upholding the defendant’s contention that its products were food products, for licensing and regulation under Chapter 500. The plaintiff appealed.
The judgment entered on rehearing contained a statement of the facts, the contentions of the parties and the questions involved, and the determination thereof by the court as above stated. With the preamble and certain other portions omit *402 ted, the judgment entered by the trial court was as follows:
“The parties have, at the time of the motion for rehearing stipulated to the following seven facts:
“1. At all times from the incorporation and commencement of business by Di-Ran until December 1, 1970, Di-Ran was actually manufacturing the products which are the subject matter of this litigation, and was regulated and inspected by the Inspection (‘Food’) Division pursuant to Chapter, 500, Florida Statutes, [F.S.A.] and not the Division of Dairy Industry.
******
“4. The imitation vanilla mix is manufactured in two different manners:
“(1) Entirely 100% vegetable base (without non-fat milk solids), or
“(2) With non-fat milk solids added.

“7. The Department stipulated that its sole objection to labeling was that, under Chapter 502, these products could not be referred to by the use of a defined dairy term, but rather must be referred to by the use of a fictitious name. For example, the term ‘imitation half and half’ includes a defined dairy term ‘half and half’. This stipulation is without prejudice to Di-Ran’s position that the labeling of this product is imitation half and half is correct and authorized pursuant to Section 500.11(3), Florida Statutes [F.S.A.].

“At the motion for rehearing, it was the position of the Department that the imitation vanilla mix, when manufactured without non-fat milk solids, is an Industry Trade Product within the definition of Section 502.161, Florida Statutes, [F.S.A.] and that the imitation vanilla mix, when manufactured with non-fat milk solids added, is a ‘filled milk product’ within the definition of Chapter 502, Florida Statutes [F.S.A.]. It is the position of Di-Ran that the imitation vanilla mix, when manufactured with or without the non-fat milk solids, is a food product and subject to regulation pursuant to Chapter 500, Florida Statutes [F.S.A.].

“There has been no testimony presented to the Court that the imitation vanilla mix is within the definition of Chapter 502, Florida Statutes [F.S.A.] but, to the contrary, the opinion testimony presented by the Department was that such mix, with non-fat milk solids added, was subject to Chapter 503. That testimony is now admittedly incorrect.
“The testimony presented at trial was uncontradicted to the effect that the imitation vanilla mix, upon which the hold order was issued, contained non-fat milk solids. The Department does not contend that this mix, with non-fat milk solids added, is an Industry Trade Product. The Court therefore finds that the imitation vanilla mix, when manufactured with non-fat milk solids, is a food product subject to regulation and inspection pursuant to Chapter 500, Florida Statutes [F.S.A.] and further finds that this product was correctly labeled pursuant to provisions of Chapter 500.11(3), Florida Statutes [F.S.A.].
“This Court determines that the manufacture and processing of imitation vanilla mix with non-fat milk solids added shall be regulated and inspected, and permit to manufacture and process shall issue, pursuant to the provisions of Chapter 500, Florida Statutes [F.S.A.].
“Having disposed of Plaintiff’s Complaint, we now pass to the determination of the remaining products manufactured by Di-Ran. We note that the issue with reference to all products, other than the imitation vanilla mix with non-fat milk solids added, was raised by Di-Ran in its counterclaim.

*403

“The question, then, is which Division of the Department of Agriculture shall have jurisdiction over the products and plant of Di-Ran.
“The uncontradicted evidence established that on December 1, 1970, the Di-Ran plant was the only plant within the State of Florida which was not a dairy plant and which was manufacturing and processing vegetable-base products of this nature. It was stipulated by the Department that Di-Ran does not handle or process any raw milk whatsoever.
“A cursory examination of Section 502.-201(1) referring to the purpose of Chapter 502, Florida Statutes [F.S.A.], reveals that it is the dairy industry which Chapter 502 seeks to regulate. It was acknowledged by the Department at the motion for rehearing that standards of equipment and other items, as established for a milk plant, must be altered or changed if milk plant standards are to be applied to the plant of Di-Ran. Therefore, it is apparent to the Court that an arbitrary application of milk plant standards to the plant of Di-Ran would be totally impractical. This is not to say that the Department would arbitrarily apply milk plant standards, but it is also obvious to the Court that certain problems have arisen previously. This Court has heretofore found it necessary, in the prior order of September 26, to admonish the agents of the Division of Dairy Industry to refrain from excessive or unwarranted supervisory and inspection tactics.”
The judgment then proceeded to find and hold as follows:
“2. The plant of Di-Ran is not a milk plant and, therefore, must be defined and classified as a food plant, subject to regulation and inspection pursuant to Chapter 500, Florida Statutes [F.S.A.].
“3. That the products of Di-Ran are properly labeled pursuant to Section 500.-11(3), Florida Statutes [F.S.A.].
“4. That the health and welfare of those persons who require the nutritional and dietary benefits of the products manufactured by Di-Ran would best be served by the regulation and inspection of the Di-Ran plant by the Inspection Division of the Department, pursuant to Chapter 500, Florida Statutes [F.S.A.].
“5. That the primary concern is the welfare of the people of the State of Florida, and that there is no reasonable basis to require dual inspection of these facilities by the Division of Dairy Industry of the Department.
“6. The purpose of Chapter 500, Florida Statutes [F.S.A.], is to insure adequate safeguards with reference to processed food products. The Court takes notice that there are on the horizon indications of expanded process and utilization of synthetic foods. People of the State of Colorado ex rel. John P. Orcutt, Commissioner of Agriculture, Plaintiff in Error v. In-stantwhip Denver, Inc., a corporation, Defendant in Error, 490 P.2d 940. Subject to reasonable regulation and labeling requirements these innovative food products, such as those manufactured by Din-Ran, will and do provide nutritional and economic benefits for consumers.
“7. The Inspection Division shall, upon application for permit by Di-Ran, forthwith issue such permit pursuant to the provisions of Section 500.12(1).
“8. The State of Florida Department of Agriculture and Consumer Services is hereby permanently restrained and enjoined from inspecting or attempting to license the plant of Di-Ran Products, Inc., by or through its Division of Dairy Industry.”
The appellant’s contentions in essence are that the findings of the trial court were contrary to the evidence and that the court incorrectly concluded the health and welfare of the public would best be served by the regulation and inspection of appel *404 lant’s plant and products under Chapter 500, Fla.Stat., F.S.A.
Upon consideration thereof in the light of the record and briefs and arguments, we are impelled to conclude the findings of the trial court are supported by competent substantial evidence, and it has not been shown that the judgment entered by the court was a misapplication of the law.
Affirmed.